**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CLIFFORD EDGIN,

     Plaintiff,

                                         Civil No. 07-cv-15343

v.                                     Hon. Gerald E. Rosen

KEVIN W. COBB, TRUSTEE
HOURLY EMPLOYMENT PENSION
DIVISION, GENERAL MOTORS CORPORATION

     Defendants.

_____/

**OPINION AND ORDER DENYING**
**PLAINTIFFS' MOTIONS TO DISQUALIFY OPPOSING COUNSEL**

At session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    July 23, 2008   

PRESENT:   Honorable Gerald E. Rosen
                     United States District Judge

## I. INTRODUCTION

These twelve consolidated prisoner cases seek to recover against Defendants on

claims of ERISA breach of fiduciary duty, negligence, injunctive relief, and restitution.

Acting pursuant to a court order, Defendants sent a number of the Plaintiffs' pension

checks to the prisons in which the Plaintiffs were incarcerated. The State of Michigan

then confiscated 90% of the funds pursuant to the State Correctional Facilities

Reimbursement Act ("SCRFA")MCL 800.401 *et seq.* Defendants admit that they acted

pursuant to the court orders and sent the checks to the prisons, but deny that they violated any fiduciary duty they had to Plaintiffs or that they acted in any way negligently or wrongly.

Through the present motions, Plaintiffs now seek to disqualify Defendants' counsel. Plaintiffs argue that, since the same firm is represents both General Motors and the General Motors Hourly Rate Employees Pension Plan (the "Plan"), there exists a conflict of interest between the Defendants: Defendant General Motors' interests being those of its stockholders, while the Plan's are those of its beneficiaries.

Defendants respond that there is no conflict of interest that has not already been recognized and allowed by Congress and the Supreme Court, and that in fact, both General Motors and the Plan are acting and have acted in concert in the best interests of the beneficiaries.

Having reviewed the briefs in support of and in opposition to Plaintiffs' motions, the accompanying exhibits, and the record as a whole, the Court finds that the relevant facts, allegations, and legal arguments are adequately presented in these written materials, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Plaintiffs' motions "on the briefs." <u>See</u> Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. For the reasons stated below, the Court finds that Plaintiffs' motions must be denied.

## II. <u>FACTUAL BACKGROUND</u>

Plaintiffs are former employees of Defendant General Motors. As a result of their

employment, Plaintiffs became entitled to receive certain pension and retirement benefits guaranteed to them by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs were, previous to the present litigation, convicted of various felony offenses and sentenced to terms of confinement in the custody of the Michigan Department of Corrections.

Pursuant to the SCRFA, the State of Michigan sought orders from state circuit courts seeking court orders directing inmates to change the address at which each receives benefits to effectuate the deposit of such benefits in the inmates' prison accounts. Where the inmate would fail or refuse to make such a change of address, the State would seek, and be granted, an order by the state trial court directing the trustee or fiduciary of the pension plan to deposit funds which the inmate was entitled to receive into the inmate's prison account. The court order would also appoint the warden of the prison facility as receiver of the funds. The order then directed the warden to pay 90% of the deposited funds to the State as called for by the SCFRA.

In an appeal of one of these court orders, the Supreme Court of Michigan held in State Treasurer v. Abbott, 468 Mich. 143, 660 N.W.2d 714 (2003), that the depositing of a prisoner's monthly pension checks in his prison account was not an assignment of the prisoner's pension benefits and factually, therefore, did not constitute a violation of ERISA. However, a wrinkle occurred in 2006 when the Sixth Circuit issued its decision in DaimlerChrysler v. Cox, 447 F.3d 967 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 2971 (2007). In that case, which was substantially identical to Abbott, the Sixth Circuit held

that the forced forwarding of a prisoner's pension checks to his prison address violated ERISA's anti-alienation provisions, and that the state court orders and warden's notices issued pursuant to the statute were preempted by ERISA's general preemption provision.

Faced with conflicting decisions from Michigan's highest court and the Sixth Circuit Court of Appeals, General Motors requested -- and was ultimately granted -- a declaratory judgment in Gale v. General Motors,___ F. Supp. 2d ___, 2008 WL 786791 (E.D.Mich. 2008), declaring that the orders, notices and Michigan State Treasurer's requests under the SCFRA to General Motors and/or the Plan are preempted by ERISA and void, to the extent that they direct General Motors and/or the Plan to send or make payments of Plaintiff Gale's pension benefits to any address or account other than as designated by Plaintiff under the terms of the Plan.  The declaratory judgment further provided that the State of Michigan is precluded from attempting to enforce any future Order and/or Notice to General Motors and/or the Plan and precluded the State from seeking orders of contempt against General Motors for failing to comply with any such Orders or Notices.

While Gale was still pending in this Court, Plaintiffs' attorney filed the present 12 suits.  However, he never indicated Gale as a companion case, as required by L.R. 83.11(b)(7)(B).  Furthermore, he filed the lawsuits over a period of several days (generally, groups of three or four cases were filed each day) and never listed any of the cases as companions to each other, even though all of the suits are, but for the name of the prisoner-plaintiff, virtually identical.

Gale, however, did not resolve all of the claims in these lawsuits. In the present cases, Plaintiffs are seeking damages for breach of ERISA fiduciary duties and common law negligence, whereas in Gale there was no claim of damages – only injunctive relief from the state court order commanding the prisoner plaintiff to change his address to his prison account.[1] Plaintiffs here claim that the pension plan fiduciaries failed to act to defend their rights to receive their pension benefits and that they should have known that the orders issued pursuant to SCFRA were of questionable legality and enforceability in light of prior rulings and precedents defining the prohibitions against alienation of benefits.

Along with the complaints filed in the instant cases, Plaintiffs' attorney also filed motions for preliminary injunction.[2] In these motions, each plaintiff asks that General Motors, which had agreed to hold pension payments to prisoners in abeyance pending the decision on the petition for *certiorari* in Cox, resume paying benefits to them, *through their attorney*. General Motors refused to do so while awaiting this Court's decision in Gale. However, General Motors stated in its response to the preliminary injunction motions that upon the Court's adoption of Magistrate Judge Pepe's Report and Recommendation (which this Court did on March 24, 2008), it was going to notify

_____

[1]Plaintiff Gale's claims were dismissed on *Rooker-Feldman* and *res judicata* grounds; Gale never filed any appeal of the Cheboygan County Circuit Court's order with the Michigan Court of Appeals, and therefore, the state court's order became final when the time for appeal expired. The case proceeded on Defendant GM's cross-claim for a declaratory judgment.

[2]The various motions for preliminary injunction are identical.

prisoners whose benefits were being held in suspense and seek direction from each of

them whether they wished to continue to have their pension benefits continued in

suspense or if they wanted them paid to a conservator or guardian, and at a status

conference on June 19, 2008, Defendants' counsel represented to the Court that letters are

presently being prepared for that purpose.

### III. <u>ANALYSIS</u>

**A. The Standards Governing the Plaintiffs' Motion**

Through the present motions, Plaintiffs seek to disqualify Defendants' counsel.

Under the pertinent State Rule,

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> > (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
> >
> > (2) each client consents after consultation
>
> (B) A lawyer shall not represent a client if the representing of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless:
>
> > (1) the lawyer reasonably believes the representation will not be adversely affected; and
> >
> > (2) the client consents after consultation. When representation or multiple clients in a single matters is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Michigan Rules of Professional Conduct 1.7. According to the comment titled "Conflict

Charged by an Opposing Party," opposing counsel may properly raise the conflict of

interest question only "[w]here the conflict is such as clearly to call in question the fair or efficient administration of justice."  MRPC 1.7.

For the present purposes, the parties largely agree upon the pertinent facts, and disagree only as to the applicability of the above-quoted rule.  In particular, the disposition of the present motion turns upon three purely legal questions: (1) whether Defendant General Motors has a conflict of interest with Defendant General Motors Hourly Rate Employees Pension Plan, (2) whether the law recognizes a conflict when an employer is administrator and sponsor of an ERISA plan, and finally, (3) if a conflict of interest found, is it such that opposing counsel could successfully move for the disqualification of counsel?  The Court now turns to these questions.

## B. Plaintiff Has Not Established a Conflict of Interest Between Defendant General Motors and Defendant General Motors Hourly Rate Employees Pension Plan As Contemplated By the Michigan Rules of Professional Conduct.

In their motions, Plaintiffs argue that "a conflict of interest exists when a lawyer represents two or more clients who have interests adverse to each other."  (See Plaintiff's Motion at 4).  Specifically, Plaintiffs allege that Defendant General Motors' obligations are to its shareholders and its goal in this regard is to "maximize profits," while Defendant Plan's obligations are to the beneficiaries of the Plan, i.e. the Plaintiffs. Plaintiffs argue that Defendant General Motors, in an attempt to maximize profits, would seek to pay as little as possible to Plan beneficiaries such as Plaintiffs and to delay any payments as long as possible.  Therefore, Plaintiffs contend that General Motors interests are in direct opposition to the Plan's interests and the same counsel should not be allowed

to represent both parties.

The cases Plaintiffs cite do not support their position. The court in <u>Evans &</u>
<u>Luptak, PLC v. Lizza</u>, 251 Mich. App. 187, 650 N.W.2d 364 (2002), held that a law firm
which represented a driver killed in an automobile accident was in violation of the
Michigan Rules of Professional Conduct when it advocated the filing of a wrongful death
action on behalf of a passenger in the car against its own client. Plaintiffs cite this case in
support of their proposition that an "attorney owes individual allegiance to their [sic]
client." (<u>See</u> Plaintiff's Motion at 5). In the present case the Plaintiffs are suing the Plan
and General Motors. Counsel for Defendants, Hardy, Lewis & Page, P.C., is defending
the Plan and General Motors from the suit brought by Plaintiffs. Although the Court
agrees with Plaintiffs' broad statement of the law, Defendants' counsel is acting within
the Michigan Rules: Hardy, Lewis is representing two parties both being sued by
Plaintiff, and from the record before the Court, both of these parties appear to have acted
in concert in all relevant actions, and neither has objected to having one law firm
represent both of them.

In <u>Robertson v. Wittenmyer</u>, 736 N.E.2d 804 (Ind. App. 2000), another case cited
by Plaintiffs, and the <u>Evans</u> court, the court describes the type of "conflict of interest"
contemplated by MRPC 1.7: "[a] lawyer should not be allowed to sue an individual client
on behalf of another present client . . . This follows, because *the focus of Rule 1.7(a) is on*
*impairment of the client-lawyer relationship*, and it is unreasonable to postulate trusting
relationships under those conditions." <u>Id</u>. at 807 (emphasis added). Following this

8

rationale, MRPC 1.7 has been consistently applied to situations in which an attorney represents parties that are present on both sides of a suit -- not necessarily in the same litigation. In El Camino Resources, Ltd. v. Huntington Nat. Bank, 2007 WL 2710807 (W.D.Mich.,2007), the court disqualified defense counsel after it found that defense counsel was representing the plaintiffs in separate litigation. Similarly in Friedman v. Dozoroc, 412 Mich. 1, 312 N.W.2d 585, 592, n. 10 (1981), a court found that an attorney could not represent parties on both sides of a lawsuit.

No such directly adverse representation exists in the present case. Hardy, Lewis & Page, P.C. represent only the Defendants. In no other litigation does the firm represent any of the Plaintiffs. Furthermore, MRPC 1.7 provides that even if a conflict of interest is found, there is no violation of the rule if the clients are informed and consent to the dual representation. It is only when the conflict is so sharp, such as the representation of both the plaintiff and the defendant in contested litigation, that consent may not obviate the conflict. Friedman, 312 N.W.2d at 25 n. 10. As the Comments to MRPC 1.7 further indicate, it is only where the conflict is such as clearly to call in question "the fair and efficient administration of justice" that opposing counsel may properly raise the question of a conflict of interest. MRPC 1.7. The Comments, however, warn that "[s]uch an objection should be viewed with caution . . . for it can be misused as a technique of harassment." MRPC 1.7. Having found no overt conflict of interest, the Court will now turn to the possibility that a conflict, as contemplated by MRPC 1.7, may exist when an employer and an ERISA plan are represented by the same counsel.

To the Court's knowledge MRPC 1.7 has never been successfully invoked to prevent defense counsel from representing both a pension plan and the employer in an ERISA suit. Indeed, quite the opposite is true. The actual provisions of the statute contemplate that the employer may act as both the administrator and sponsor of the plan. 29 U.S.C. § 1002(16). Had Congress anticipated that there existed an irreconcilable conflict of interest between the employer and an ERISA plan, surely it would not have allowed the employer both to control and fund the pension plan. In <u>Varity v. Howe</u>, 516 U.S. 489, 498 (1996), the Supreme Court explained that:

> Under ERISA, an employer is permitted to act both as plan sponsor and plan administrator. § 408(c)(3), 29 U.S.C. § 1108(c)(3) (1988 ed.). Employers who choose to administer their own plans assume responsibilities to both the company and the plan, and, accordingly, owe duties of loyalty and care to both entities. In permitting such arrangements, which ordinary trust law generally forbids due to the inherent potential for conflict of interest, Congress understood that the interests of the plan might be sacrificed if an employer were forced to choose between the company and the plan. Hence, Congress imposed on plan administrators a duty of care that requires them to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries." § 404(a)(1). Congress also understood, however, that virtually every business decision an employer makes can have an adverse impact on the plan . . .

Furthermore, in <u>Firestone Tire and Rubber Co., v. Bruch</u>, 489 U.S. 101, 115 (1989), the Court recognized the possible conflict when the employer controls the plan and funds the plan but further recognized that such possible conflict was permissible.

Finally, in <u>Massachusettes Mut. Life Ins. Co. V. Russell</u>, 473 U.S. 134 (1985), the Court described the duties of the trustees and plan administrators:

> It is of course true that the fiduciary obligations of plan administrators are to serve the interest of participants and beneficiaries and, specifically, to provide them with

the benefits authorized by the plan. But the principal statutory duties imposed on the trustees relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest. Those duties are described in Part 4 of Title 1 of the Act, which is entitled "Fiduciary Responsibility," see §§ 401-414, 88 Stat. 874-890, 29 U.S.C. §§ 1101- 1114, whereas the statutory provisions relating to claim procedures are found in Part 5, dealing with "Administration and Enforcement." §§ 502(a), 503, 88 Stat. 891, 893, 29 U.S.C. §§ 1132(a), 1133. The only section that concerns review of a claim that has been denied -- § 503 -- merely specifies that every plan shall comply with certain regulations promulgated by the Secretary of Labor.

Id. at 143 (footnotes omitted).

In sum, the Supreme Court has recognized the various interests of the parties to an ERISA plan and determined that there is no irreconcilable conflict of interest when a plan is controlled and funded by the employer. Certainly, this would make it reasonable for an attorney to assume, as did defense counsel in the present suit, that he could fairly represent both the plan and the company in litigation, especially when both are named defendants to plan participant's claim.

The preceding analysis is in accord with the record before the Court with regard to the present suit. From the existing record, the Court concludes that the Plan and General Motors have acted in relative concert with regard to the Plaintiffs' pension benefits and with regard to their reactions to the various court decisions dealing with ERISA benefits and the SCRFA. If either Defendant is at fault, it is very probable that both are at fault, as Plaintiff has implicitly believed by suing both General Motors and the Plan. The Court simply cannot find any conflict of interest between General Motors and the Plan which would disqualify defense counsel from representing either or both Defendants in the

present litigation.

## IV. <u>CONCLUSION</u>

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's motion to disqualify Defendants' counsel **[Dkt. #6]**[3] is DENIED.

s/Gerald E. Rosen_____
United States District Judge

Dated:  July 23, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 23, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry_____
Case Manager

---

[3]This same motion is filed in case no. 07-15344 at Dkt. #5; in case no. 07-15345 at Dkt. #6; in case no. 07-15372 at Dkt. #7; in case no. 07-15373 at Dkt. #6; in case no. 07-15374 at Dkt. #5; in case no. 07-15407 at Dkt. #6; in case no. 07-15408 at Dkt. #4; in case no. 07-15409 at Dkt. # 4; in case no. 07-15496 at Dkt. #7; in case no. 07-15497 at Dkt. #7; and in case no. 07-15498 at Dkt. #8.  All of these motions are DENIED by this Order.